[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 20, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14118
Non-Argument Calendar
_____

D. C. Docket No. 04-00321-CR-T-30-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES DANIEL MAYE,

Defendant,

LEROY COLLINS,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

**(July 20, 2007)**

Before TJOFLAT, HULL and FAY, Circuit Judges.

PER CURIAM:

Leroy Collins appeals his convictions for conspiracy to access a computer without authorization, in violation of 18 U.S.C. § 371 (Count One); two counts of accessing the National Crime Information Center (NCIC)[1] database without authorization, in violation of 18 U.S.C. § 1030(a)(2)(B), (c)(2)(B)(i) and (ii), and 2 (Counts Two and Four); and making a false statement during an interview with a special agent of the Federal Bureau of Investigation (FBI), specifically, Collins "stated that he had never met James McLemore, when in truth and fact as [he] then and there well knew he had previously met James McLemore," in violation of 18 U.S.C. § 1001(a)(2) (Count Three). Collins raises two issues on appeal: (1) the district court abused its discretion in denying his motion for mistrial after the jurors expressed concern that, given that violent activity was associated with the crimes at issue, they may suffer harm as a result of their verdict; and (2) there was insufficient evidence to support his conviction for making a false statement to an agent of the FBI. For the reasons set forth more fully below, we affirm.

## I. Background

At Collins's trial, Linda Bobo testified that she began a romantic relationship with Collins in 1981. According to Bobo, Collins supported her

---

[1]According to Collins's indictment, "[t]he NCIC database collected and maintained records relating to criminal histories of millions of people as well as persons and vehicles sought by law enforcement agencies nationwide. Access to the NCIC database was restricted to law enforcement officers authorized to access it for law enforcement purposes."

financially, controlled all of her actions, and physically abused her. In 1995, Bobo met James McLemore at the Touch of Class nightclub and began a secret relationship with him, but she ultimately informed Collins of her relationship with McLemore because she was afraid that Collins would harm her if he found out on his own. Bobo told Collins that she wanted to leave him and have a relationship with McLemore. Sometime later, McLemore was shot in Bobo's driveway, but he survived. After McLemore recovered, he and Bobo went to the nightclub, and as they were leaving the nightclub, McLemore was shot again. McLemore died from the shot. On cross-examination, Collins's counsel asked Bobo whether she was "ever anywhere where Mr. Collins and [McLemore] were face-to-face." Bobo answered in the negative.

Willie McCrary, a friend of Collins's for more than 30 years, also testified at trial. During McCrary's direct testimony, the government played an audio tape of a recorded conversation between McCrary and Collins. The transcript of the tape recording is as follows:

> McCrary: Well, you know, now, we're talking about it. It'll be all right. We ain't gonna talk about this no more. I've, I've been thinking about it 'cause I never cared about it. Why, you told me, James slapped you and you know.

> Collins: He did. He pushed me. He didn't slap me. Down here at Bubba's, he did. Now, here's how he slapped me. He didn't push, he, he slapped me. He pushed me. Down to Bubba. At the time, I didn't

3

know who James was until uh, uh, uh Lucky told me. If he'd had told me that was James, I would've taken care of 'em.

McCrary: Well (UI) you kept that back. After you find out that with James, that was what made the animosity come in your heart.

Collins: That's, that's what happened.

After the tape was played, McCrary testified that the "James" to whom he referred on the tape was McLemore.

Mark Flint, a Florida Department of Law Enforcement officer, testified that he and FBI Special Agent Leo Martinez interviewed Collins in January 2003. With regard to anything that Collins had said during the interview concerning McLemore, Officer Flint testified that:

> [Collins] replied to Agent Martinez and I that Linda Bobo had basically asked him who killed McLemore, and also if he had done it or paid somebody else to do it. Collins told us that he had never met McLemore and said, . . . 'If I was going to be involved, I'd do it myself' or words to that effect.

After the government rested its case, Collins's counsel moved for judgment of acquittal as to Count Three of the superseding indictment, arguing that there was insufficient evidence to prove that Collins made a false statement to an FBI agent. Specifically, Collins's counsel asserted that there was no evidence proving that Collins's statement, that he did not know McLemore, was false because none of the government's witnesses testified that Collins had ever met McLemore. The

4

district court denied Collins's motion without explanation. Collins renewed his motion for judgment of acquittal at the close of his evidence, and the court again denied the motion without explanation.

Approximately 25 minutes after the jury retired to the jury room for its deliberations, it sent the court the following question:

> Because there is testimony of violent activity associated with these crimes we have several jurors concerned about their safety after returning a verdict one way or the other. What is the support system in place to protect a juror after a trial? What [protocol] should we use in the event of something odd happen[ing]?

The court allowed the parties an opportunity to present arguments regarding the correct way for the court to respond to the jury's letter. Thereafter, Collins's counsel joined his codefendant's motion for a mistrial on the grounds that the jury's note indicated that the jurors' concern for their safety influenced their ability to be fair and impartial. Specifically, counsel argued that,

> [i]t seems that some of these people are worried about their safety and linking it to a guilty verdict and for reasons unrelated to the evidence in this case, either the testimony or the exhibits; and because of the fact that this extraneous concern now is such a powerful influence, it appears, in the jury room, we would move for a mistrial.

The court denied the motion for mistrial, and the government suggested a response to the jury's note. The court asked whether the defendants agreed with the government's suggestion, and they responded that, "once the Court denied our

5

motion for mistrial, then our belief is this is really about the only alternative that we have, and we agree with the language." Thus, the court returned the following response to the jury: "The Court and the parties agree that there is no reason for any concern about the safety of any juror in this case. You should continue to deliberate on the issues before you and should not let any such concerns be part of your consideration in your further deliberations."

The jury found Collins guilty on all four counts of his superseding indictment. The court sentenced him to 60 months' imprisonment on each count, to be served consecutively, for a total term of 240 months' imprisonment.

## II. Discussion

### A. Motion for Mistrial

Collins argues on appeal that, under the unique circumstances of his case, the district court abused its discretion in denying his motion for mistrial. He maintains that the court's failure to investigate the specifics of the jurors' concerns for their safety resulted in a record devoid of evidence regarding what prejudice he may have suffered, thus leaving an incomplete record for the district court's and this Court's review.

We review a district court's denial of a motion for mistrial for an abuse of discretion. United States v. Trujillo, 146 F.3d 838, 845 (11th Cir. 1998).

Ordinarily, the district court's decision whether to hold a hearing to investigate alleged juror misconduct also is reviewed for abuse of discretion. United States v. Watchmaker, 761 F.2d 1459, 1465 (11th Cir. 1985). "[T]he failure to hold a hearing constitutes an abuse of discretion only where there is evidence that the jury was subjected to influence by outside sources." Id. However, we will review Collins's argument that the district court erred in failing to hold an investigatory hearing for plain error because Collins did not object or request a hearing before the district court. See United States v. Rodriguez, 398 F.3d 1291, 1297 (11th Cir. 2005) (explaining that this Court will not "correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights . . . but only if (4) the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings") (citation and quotations omitted).

Collins's argument on appeal centers around the district court's failure to investigate the jurors' concerns and determine whether those concerns would prejudice his defense. Notably missing from Collins's arguments on appeal, and in the district court, however, is any assertion that there was extrinsic evidence to which the jurors may have been exposed that would have caused them to raise concerns for their safety. Collins merely blames the court for failing to investigate

7

the jurors' concerns, but fails to demonstrate that there was any need to investigate in the first instance. As we have held, the district court abuses its discretion, or plainly errs, in failing to hold an investigatory hearing "only where there is evidence that the jury was subjected to influence by outside sources." See Watchmaker, 761 F.2d at 1465. A careful review of the record in Collins's case does not reveal any possibility that the jurors may have been exposed to extrinsic evidence, nor does Collins point to any such occurrence.

On the other hand, the record is replete with testimony from Bobo of Collins's violent nature and history of violent acts. Moreover, the jurors' note to the court supports the conclusion that their concerns arose from the evidence produced at trial: "Because there is testimony of violent activity associated with these crimes we have several jurors concerned about their safety after returning a verdict one way or the other." We have explained that "[d]iscussions among the jurors as to their fear of the defendants are not inappropriate, so long as such discussions do not lead them to form an opinion of the defendants' guilt or innocence of the offenses charged." Watchmaker, 761 F.2d at 1466. There was no evidence that the jurors' fear lead them to form such an opinion, nor was there evidence that the jurors had been influenced by outside evidence so as to warrant an investigation into the jurors' fear. In light of the trial testimony, the jurors' note

8

to the court, and the lack of any suggestion in the record that the jury had received extrinsic evidence, the district court did not abuse its discretion in failing to hold an investigatory hearing or in denying Collins's motion for mistrial.

## B. Sufficiency of the Evidence

Collins argues that the government failed to present sufficient evidence at trial to support his conviction for making a false statement to an FBI agent. He first asserts that there was no evidence to establish that he made a false statement to an FBI agent. He contends that the only testimony regarding the statement at issue came from Officer Flint, who was a state law enforcement officer, and not from Special Agent Martinez, who the government asserted was the FBI agent receiving Collins's false statement. He argues that it was insufficient for the government to provide only third-party testimony concerning the alleged false statement. Collins secondly argues that the government presented no evidence that his statement was false. He notes that, contrary to the government's charge, Bobo testified that, to her knowledge, he and McLemore never had met face-to-face. In his reply brief, Collins asserts that the conversation between himself and McCrary did not prove that his statement to the FBI agent was false.

We review <u>de novo</u> the sufficiency of evidence to support convictions. United States v. Eckhardt, 466 F.3d 938, 944 (11th Cir. 2006), <u>cert. denied</u>, 127

S.Ct. 1305 (2007). "In reviewing the denial of a motion for acquittal, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> (quotation omitted) (emphasis in original).

Count Three of Collins's superseding indictment charged that, in violation of § 1001(a)(2), Collins made a false statement during an interview with a special agent of the FBI, specifically, that he "stated that he had never met James McLemore, when in truth and fact as [he] then and there well knew he had previously met James McLemore." Pursuant to § 1001(a)(2), "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government . . . knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation" shall be subject to a fine or imprisonment. 18 U.S.C. § 1001(a)(2). In order to establish a violation of § 1001, the government must prove: "(1) that the defendant made a false statement; (2) that the statement was material; (3) that the defendant acted with specific intent to mislead; and (4) that the matter was within the purview of a federal government agency." <u>United States v. McCarrick</u>, 294 F.3d 1286, 1290 (11th Cir. 2002).

As to Collins's first assertion,[2] the evidence in the record is sufficient to

_____

[2]In his initial brief, Collins limited his argument on this issue to two assertions: (1) there was no evidence that he made the statement to a FBI agent; and (2) there was no evidence that

10

support a finding that he made the statement at issue to a FBI agent, as charged in his superseding indictment. At trial, Officer Flint, a state law enforcement officer, testified that he had held an interview between himself, Special Agent Martinez, and Collins. Officer Flint testified that, during the interview, Collins stated that he had never met McLemore. Officer Flint's testimony indicates that Collins was talking to both Officer Flint and Special Agent Martinez when he made the statement at issue. The fact that Officer Flint, rather than Special Agent Martinez, testified to the statement does not negate the evidence from Officer Flint's testimony that Collins stated to a FBI agent, namely Special Agent Martinez, that he never had met McLemore. Given Officer Flint's testimony, and the lack of evidence that Collins did not make that statement during the interview with both a state officer and a federal agent, a reasonable trier of fact could conclude that Collins made the statement at issue to a FBI agent.

Collins's second assertion, that the government failed to establish that his statement was false, is similarly without merit. Review of the record and the government's appellate brief reveals that the only evidence that the government

the statement was false. However, in his reply brief, Collins expands his argument to include challenges to the materiality of the statement and whether he had the specific intent to mislead. We need not address those additional arguments, however, because Collins raised them for the first time in his reply brief. See United States v. Levy, 416 F.3d 1273, 1276 n.3 (11th Cir.), cert. denied, 126 S.Ct. 643 (2005) (explaining that we decline to consider issues raised for the first time in a reply brief). As such, the scope of our review is limited to the first two arguments that Collins raised in his initial brief.

introduced to establish that Collins had actually met McLemore before he made the allegedly false statement was the testimony of McCrary and the transcript of the conversation between McCrary and Collins. In that conversation, Collins detailed an encounter that he had with an individual named "James," in which James pushed or slapped him. Collins additionally told McCrary that, at the time when he was pushed, he did not know that the individual was "James," but at a later date, someone named "Lucky" told him that he had been pushed by "James." After the government played the tape of the conversation at trial, McCrary testified that the "James" to whom he referred on the tape was McLemore. The government later called Officer Flint to testify that, during the interview with Collins and Special Agent Martinez, Collins stated that he had never met McLemore.

Viewing the evidence in the light most favorable to the government, a rational trier of fact could have found that, based upon Collins's own statements during his conversation with McCrary, he actually had met McLemore during the pushing incident, and, thus, made a false statement during his interview with Officer Flint and Special Agent Martinez. See Eckhardt, 466 F.3d at 944 (explaining that, in reviewing the denial of a motion for judgment of acquittal, we will view the evidence in the light most favorable to the government). Accordingly, Collins has failed to demonstrate that there was insufficient evidence

to support his conviction for making a false statement to a special agent of the FBI.

### III. Conclusion

In light of the foregoing, the district court did not abuse its discretion in denying Collins's motion for mistrial or in failing to question the jurors regarding their safety concerns. Also, the district court did not err in denying Collins's motion for judgment of acquittal on Count Three because the government presented sufficient evidence of Collins's guilt. Accordingly, Collins's convictions are

**AFFIRMED.**[3]

---

[3]This is the appeal of Leroy Collins. Collins and Charles Daniel Maye were co-defendants before the district court, but Maye's appeal was voluntarily dismissed on August 28, 2006.