DISSENTING OPINION BY
NAKAYAMA, J.
Our review of this case focuses on two notes sent by the jury. The first note announced to the court that the jury had reached a verdict. The second note, signed four minutes after the first, expressed the jurors’ concern for their safety based on the behavior of a man seated on the prosecutor’s side of the courtroom. After questioning the jurors regarding the notes, the circuit court declared a mistrial based on manifest necessity, concluding that “the jury was not impartial in them deliberation and decision-making process” because of the possibility that they were influenced by the man’s behavior.
The Majority concludes that the circuit court did not abuse its discretion in deciding that manifest necessity existed for a mistrial. However, under the totality of the circumstances, the record evidences that the jurors were impartial despite expressing concern for their safety. Additionally, under Hawaii law, jurors’ safety concerns are not per se grounds for declaring a mistrial. For these reasons, I respectfully dissent from section III.B of the Majority’s opinion and conclude that manifest necessity did not exist for a mistrial. As such, I would hold that Gouveia’s retrial is now barred by the protection against double jeopardy.
I. BACKGROUND
During an argument on September 25, 2012, Gouveia punched or slapped Albert Meyer, who then fell and struck his head on the road. Days later, Meyer died from brain injuries related to the fall. Gouveia was arrested and charged with manslaughter in violation of Hawaii Revised Statutes § 707-702(l)(a).
After closing arguments were made and the jury entered deliberations, the jury sent the court two notes. The first note stated: “We reached a verdict.” The second, signed four minutes after the first, stated: “Concern. This morning on prosecutor’s side of crtroom [sic] there was a man, shaved head, glaring and whistling at defendant. We have concern for our safety as jurors.”
The circuit court conferred with counsel for both sides. Defense counsel stated that he knew nothing about the incident described in the second note. The prosecutor stated that, while she did not witness the incident, she did know that the decedent’s brother, who had a shaved head, was in the courtroom and that “he was pretty upset.”
The circuit court decided to investigate this matter further before opening the verdict by conducting a voir dire of the jurors. The circuit court, along with counsel for both sides, questioned all twelve jurors individually. The voir dire revealed the following: 1) four jurors witnessed a man, seated on the prosecutor’s side of the courtroom, whistling and/or glaring at Gouveia, and that this incident was brought to the attention of the other jurors sometime during deliberations; 2) seven jurors testified that discussion of the *82 incident occurred before the verdict was reached; 3) one juror testified that the incident “appeared] to have an impact on other people’s decision[,]” although it did not impact her decision; and 4) all twelve jurors testified that “neither the incident itself nor the discussion regarding the incident during the deliberations affected their own decision];.]”.
At the conclusion of voir dire, defense counsel stated that he wished to take the verdict. The State, in contrast, moved for a mistrial, arguing that there was manifest necessity because the incident was discussed during deliberations and seemed to influence some jurors. When the State began to explain that the incident tainted the verdict because of the facts of the case, the circuit court interrupted and asked the following:
Doesn’t matter, I mean, does it even matter what the facts or what’s in dispute? Isn’t it—don’t you think it’s per se an inappropriate extraneous circumstance that if the jurors have concerns for personal safety based on something they observed in the courtroom being done by somebody in the gallery, that if it entered their discussions and had an impact on any of them, that it would taint the verdict?
The State agreed.
Defense counsel argued that a mistrial based on manifest necessity was not required because “[e]very one of the jurors” testified that the incident had no impact on them decision, and that most of the jurors indicated that the concern was more of an afterthought that had no bearing on the deliberations.
After listening to the arguments, the circuit court orally granted the State’s motion for mistrial:
I find it difficult to really believe when I, you know, apply my reason and common sense to this that at least some of these jurors have this, what strikes me as a really serious concern for their personal safety and it came up according to, at least as I count, four or five of them, it came up, was one of the first things, one of the first things, one of the first topics of discussion when they got back in the room and started deliberating the case. Somebody brought it up and they started talking about it. It frankly beggars my reason and common sense that it would have no bearing on the deliberations in this case and therefore the verdict.
I’m going to grant the State’s motion for mistrial. I’m going to find there’s manifest necessity for such based on what I said and all the—and everything else that’s been put on the record, including my questions to counsel.
The verdict’s going to be sealed for future purposes, if any, but obviously we’re not going to take the verdict. I’m declaring a mistrial and I’m finding manifest necessity for that, because I don’t think there’s anything short of a mistrial that’s going— that can cure it. The verdict’s tainted, in my view, based on my findings.[1]
On October 22, 2013, the circuit court entered its findings of fact, conclusions of law, and order granting the State’s motion for mistrial, holding that there was manifest necessity for a mistrial.
II. DISCUSSION
A. Manifest Necessity Did Not Exist For A Mistrial.
“A mistrial is properly declared and retrial is not barred by the defendant’s right against double jeopardy where the defendant consented to the mistrial or there was manifest necessity for the mistrial.” State v. Wilmer, 97 Hawai’i 238, 242-43, 35 P.3d 755, 759-60 (2001) (citing State v. Quitog, 85 Hawai’i 128, 142, 938 P.2d 559, 573 (1997)). In this case, Gouveia did not consent to the mistrial; thus, our inquiry focuses on whether there was manifest necessity for the mistrial.
“Manifest necessity is defined as ... circumstances in which it becomes no longer possible to conduct the trial or to reach a fair result based upon the evidence.” Wilmer, 97 Hawai’i at 244, 35 P.3d at 761 (quoting Quitog, 85 Hawai’i at 143, 938 P.2d at 574). When a fan- result is potentially compromised be *83 cause of outside influences affecting the jury, the court must act:
the initial step for the trial court to take ... is to determine whether the nature of the [outside influence] rises to the level of being substantially prejudicial.... Where the trial court does determine that such influence is of a nature which could substantially prejudice the defendant’s right to a fair trial, a rebuttable presumption of prejudice is raised. The trial judge is then duty bound to further investigate the totality of circumstances surrounding the outside influence to determine its impact on jury impartiality.,.. The standard to be applied in overcoming such a presumption is that the outside influence on the jury must be proven harmless beyond a reasonable doubt.
State v. Williamson, 72 Haw. 97, 102, 807 P.2d 593, 596 (1991) (internal quotation marks and citations omitted; formatting altered); see also State v. Napulou, 85 Hawai’i 49, 55-56, 936 P.2d 1297, 1303-04 (App. 1997).
In short, Hawai'i courts utilize a two-step inquiry for determining whether a mistrial based on manifest necessity is warranted when outside influences occur: 1) whether the nature of the outside influence on the jury could be substantially prejudicial to a fair trial, and, if so, 2) whether, under the totality of the circumstances, the outside influence on the jury was harmless beyond a reasonable doubt.
Under the first step, the circuit court correctly recognized that the outside influence raised the possibility of substantial prejudice to a fair trial and properly conducted an investigation to determine the impact of the outside influence on juror impartiality. Under the second step, however, I conclude for two reasons that the circuit eourt erred when it held that the outside influence was not harmless beyond a reasonable doubt.
1. The totality of the circumstances indicates that the outside influence on the jury was harmless beyond a reasonable doubt.
First, under the totality of the circumstances, the timing and substance of the jury communications, along with the jurors’ testimonies during voir dire, indicate that the verdict was not tainted by the outside influence and was thus harmless beyond a reasonable doubt.
The record evidences that the jury signed the first note, announcing that they had reached a verdict, four minutes before signing the second, which expressed their safety concern. The timing of the notes indicates that the verdict was reached before the jurors decided to express their concern to the court, which implies that the concern stemmed from the verdict. This implication is supported by the voir dire testimony of several jurors:
[THE COURT]: And do you have any idea, was there any discussion or do you have any inferences or anything about why the jurors thought I should know about this? Did they want me to do something about it, or what was you all’s intention, if you can tell me that, of communicating this to me?
[JUROR # 3]: I think that everyone wanted to feel that they could leave safely today when it was over.
(Emphasis added).
[DEFENSE COUNSEL]: Did anybody-okay, obviously there was a decision to inform the Court and express concern. What kind of concern was expressed?
[JUROR # 4]: I think it was once the verdict was read, that maybe there would be some retaliation against, you know, of us for whatever reason just being a juror.
[[Image here]]
[DEFENSE COUNSEL]: What were the discussions about—the concerns, I guess, how’s that?
[JUROR # 4]: Just like what I said before that once the verdict was, you know, like I said, was said, we would be in jeopardy or could be in jeopardy.
(Emphasis added).
[THE COURT]: Best estimate. When did [discussion of the safety concerns] first come up—early, middle, late in the deliberations?
[JUROR # 7]: Towards the end.
*84 [THE COURT]: Toward the end. Not before?
[JUROR # 7]: No it wasn’t before. It wasn’t about the case, so we weren’t really-focused on it.
[[Image here]]
[THE COURT]: Okay, that’s fine. About how long did you all talk about this?
[JUROR # 7]: Not very. Just brought it up for a few minutes, and then one of the ladies said, okay, I wonder if that would be directed at us, you know, after everything’s done, and maybe we should just raise it so everybody can be aware that there was someone that seemed threatening to another person.
(Emphasis added). These testimonies indicate that the safety concern arose because of the substance of the verdict reached by the jurors, and that the concern did not influence the jurors’ deliberation of the verdict. Additionally, all jui'ors testified during voir dire that the incident did not affect their ability to be impartial jurors.
Finally, even if we were to conclude that the jurors’ concern for their safety did influence the verdict, the logical implication of that conclusion is that the jurors would have been influenced to decide against Gouveia for fear of retribution by the man they observed glaring and whistling at Gouveia. However, the above testimonies of jurors three, four, and seven indicate that the jurors were concerned for their safety post-verdict, which suggests that they decided in favor of Gouv-eia and were fearful of retaliation by the shaved-head man.[2] As such, the jurors’ testimonies lend support to the conclusion that the outside influence did not taint tire verdict but simply raised concerns amongst the jurors of possible retaliation after the verdict was read.
Therefore, although this incident raised the possibility of substantial prejudice to a fair trial, the totality of the circumstances reveals that the outside influence did not taint the verdict and was thus harmless beyond a reasonable doubt.
2. Jurors’ safety concerns are not per se grounds for declaring a mistrial.
Second, safety concerns like those expressed by the jurors in this case are not, on their own, sufficient grounds for declaring a mistrial under Hawai'i law.
For example, in State v. Napulou, 85 Hawai’i 49, 936 P.2d 1297 (App. 1997), the ICA considered a similar set of facts and issue. During deliberations in a second degree murder and burglary trial, the empaneled jurors discussed amongst themselves their concerns that members of the defendant’s family were following jurors from the courtroom to the parking area. Id. at 51, 936 P.2d at 1299.
The jurors eventually sent a communication to the court, which stated: “Some jurors have noticed members of [Napulou’s] family following them downstairs and toward the car garage. If a guilty verdict is given[,] could there be a danger to some of us or has some arrangement been made for protection.” Id. at 51-52, 936 P.2d at 1299-300. The circuit court conducted a voir dire of each juror and each juror testified that he or she could continue to deliberate on the evidence fairly and impartially. Id. at 54, 936 P.2d at 1302. After the voir dire, Napulou moved for a mistrial, which was denied by the circuit court, M Napulou was convicted of attempted murder in the second degree, burglary in the first degree, and assault in the second degree. Id. at 51, 936 P.2d at 1299. Napulou appealed, arguing that the circuit court erred when it denied his motion for a mistrial because the evidence indicated that the jury’s verdict had been tainted by them concern for their safety. IcL
On appeal, the ICA affirmed the decision of the circuit court, concluding that the “statements of the jurors on voir dire, if believed, were sufficient to establish beyond a reasonable doubt that Napulou was not denied an impartial jury.” Id. at 56, 936 P.2d at 1304. In coming to this conclusion, the ICA considered the following:
In Napulou’s case, the trial court implicitly recognized that the jurors’ comments re *85 garding their safety concerns and possible retaliation by Napulou’s family possibly affected Napulou’s substantial right to receive a fair trial by an impartial jury. The court therefore conducted a voir dire of each juror outside the presence of the other jurors, in accordance with Williamson, to determine if any jurors had actually been tainted by the jury’s discussion about Napulou’s family.
The trial court questioned each juror individually, The proceedings were unhurried and thorough. Napulou’s defense counsel was permitted to question the jurors and did so at some length. The questioning revealed that the jurors paid little attention to members of Napulou’s family. Clearly, any concerns of the jurors about Napulou’s family were peripheral to the matter of Napulou’s guilt or innocence and did not have a direct bearing on the evidence in the case. Neither the court nor counsel elicited any evidence during the voir dire to indicate that the jurors’ comments regarding Napulou’s family were “used as a circumstance against” Napulou or that jurors considered the comments in question during their deliberations. Furthermore, the three jurors who appeared most concerned for their safety, jurors Nos. 2, 9, and 12, were positive in them assertions that they could continue as impartial jurors, unaffected by the safety concerns that had disturbed them.
Id, Thus, the ICA determined that the jurors’ safety concerns were not per se grounds for declaring a mistrial.
Similarly, in the current case, the jurors sent a communication to the court expressing concern for their safety. The circuit court recognized that the jurors’ concern raised the possibility of substantial prejudice to a fair trial and conducted a voir dire to determine if the verdict had been tainted by the jurors’ concern. As in Napulou, the circuit court, and counsel for both sides, questioned each juror individually. And, as in Napulou, each juror indicated that the safety concern did not affect his or her deliberation of the case. As such, Napulou and the current case are factually similar in important ways, namely that: 1) jurors in both cases expressed safety concerns to the court, and 2) all the jurors, when questioned during voir dire, indicated that these concerns did not affect their ability to be impartial jurors. And yet, these factually similar cases had different outcomes.
In Napulou, the IGA upheld the trial court’s denial of a motion for mistrial that was based on jurors’ safety concerns. In contrast, the record in this case indicates that the circuit court relied heavily, if not solely, on the jurors’ safety concern as a basis for declaring a mistrial, For instance, when questioning the prosecutor about her reasoning behind the motion for a mistrial, the circuit court asked:
Isn’t it—don’t you think it’s per se an inappropriate extraneous circumstance that if the jurors have concerns for personal safety based on something they observed in the courtroom being done by somebody in the gallery, that if it entered their discussions and had an impact on any of them, that it would taint the verdict?
(Emphasis added). Thus, it appears that, in reaching its conclusion, the circuit court believed that the jurors’ safety concern, on its own, was sufficient grounds for a mistrial. This was error.
Napulou established that jurors’ safety concerns are not per se grounds for declaring a mistrial. Based on this precedent, and the evidence in this case that the safety concern did not affect the jurors’ impartiality, the circuit court should have concluded that any concern that the jurors had for their safety was peripheral to a determination that Gouv-eia was guilty or not guilty. See also U.S. v. Maye, 241 Fed.Appx. 638, 641-42 (11th Cir. 2007) (“We have explained that discussions among the jurors as to their fear of the defendants are not inappropriate, so long as such discussions do not lead them to form an opinion of the defendants’ guilt or innocence of the offenses charged.”) (formatting altered).
III. CONCLUSION
In sum, the totality of the circumstances evidences that the outside influence did not affect juror impartiality in this ease. The *86 timing and substance of the juror communications, in addition to juror testimony during voir dire, strongly suggest that the jurors’ safety concern merely stemmed from the verdict they reached, and did not factor into the verdict deliberations. Additionally, Napu-lou established that jurors’ safety concerns, on their own, are not grounds for declaring a mistrial.
Por these reasons, I conclude that the outside influence on the jury was harmless beyond a reasonable doubt and that manifest necessity did not exist to declare a mistrial. As such, I would hold that the State is barred under double jeopardy from trying Gouveia again.

. Although the verdict was not unsealed at the circuit court level, the record indicates that both the court and the parties believed that the verdict was "not guilty.”

. In fact, the verdict, unsealed at tire ICA level, revealed that the jury did decide in favor of Gouveia. And while this court had the benefit of seeing tlie verdict where the circuit court did not, the record suggests that the circuit court also believed the verdict was not guilty.